UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

DAVID LEE ROBINSON, JR.,

        Plaintiff,                    Civil Action No. 2:16-cv-00077
                                                    Honorable Aleta A. Trauger
                                                    Magistrate Judge David R. Grand
v.

SOCIAL SECURITY ADMINISTRATION,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD [17]**

Plaintiff David Lee Robinson, Jr. ("Robinson") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). On April 24, 2017, Robinson filed a Motion for Judgment on the Administrative Record and a Memorandum in Support. (Docs. #17, 18). On May 12, 2017, the Commissioner filed a response in opposition to Robinson's motion. (Doc. #19). This matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #16).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Robinson is not disabled under the Act. Accordingly, the Court recommends that Robinson's Motion for Judgment on the Administrative Record (Doc. #17) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On January 1, 2013, Robinson filed an application for SSI, alleging disability as of March 30, 2010.[1] (Tr. 151-57). This application was denied initially on April 12, 2013, and on reconsideration on June 28, 2013. (Tr. 104-06, 111-12). Robinson filed a timely request for an administrative hearing, which was held on February 11, 2015, before ALJ K. Dickson Grissom. (Tr. 54-72). Robinson, who was represented by attorney Donna Simpson, testified at the hearing, as did vocational expert J. D. Flynn. (*Id.*). On April 17, 2015, the ALJ issued a written decision finding that Robinson is not disabled under the Act. (Tr. 39-49). On June 11, 2016, the Appeals Council denied review. (Tr. 14-19). Robinson timely filed for judicial review of the final decision on September 27, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement … or a

---

[1] Robinson subsequently amended his alleged onset date to February 8, 2013. (Tr. 571).

> combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. *Robinson's Reports and Testimony*

At the time of the administrative hearing, Robinson was 54 years old, and at 5'8" tall, weighed 190 pounds. (Tr. 59, 73). He was divorced and lived in a house with his mother. (Tr. 59, 183). He completed the tenth grade and subsequently earned a GED. (Tr. 59-60, 169). Robinson did not work between 1996 and 2010 because he was incarcerated for murder, though that conviction was apparently ultimately overturned. (Tr. 168, 180). Subsequently, he worked as a painter for a few months before suffering a transient ischemic attack ("TIA"). (Tr. 62).

Robinson alleges disability primarily as a result of the effects of that TIA, posttraumatic stress disorder, and high blood pressure. (Tr. 73, 168). He has difficulty sleeping but is able to attend to his personal needs, prepare meals, take out the trash, mow the lawn, drive, shop in stores, watch movies, visit friends and family members, and play with his grandchildren. (Tr. 63-64, 184-87). He has difficulty getting along with authority figures, handling stress, and dealing with changes in routine. (Tr. 189).

2. *Medical Evidence*

The Court has thoroughly reviewed Robinson's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3. *Vocational Expert's Testimony*

J. D. Flynn testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 66-71). The ALJ asked the VE to imagine a claimant of Robinson's age, education, and work experience who can perform light work, with the following limitations: can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can stand and/or walk for 6 hours in an 8-hour workday and can sit with normal breaks for 6 hours in an 8-hour workday; limited to frequent push-pull maneuvers with his right upper extremity; can occasionally climb ramps and stairs, balance, stoop (bending at the waist), kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; limited to frequent overhead reaching, handling, and fingering with the right upper extremity; and limited to only occasional interaction with the public and coworkers. (Tr. 67-69). The VE testified that the hypothetical individual would be capable of working in the jobs of photocopying machine operator (15,000 jobs nationally), collator operator (40,000 jobs), and parking lot attendant (65,000 jobs). (Tr. 69).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Robinson is not disabled under the Act. At Step One, the ALJ found that Robinson has not engaged in substantial gainful activity since January 1, 2013 (the application date). (Tr. 41). At Step Two, the ALJ found that Robinson has the severe impairments of residuals of mild cerebrovascular disease, depression, anxiety, and substance abuse. (*Id.*). At Step Three, the ALJ found that Robinson's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 42).

The ALJ then assessed Robinson's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following limitations: can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can stand and/or walk for 6 hours in an 8-hour workday and can sit with normal breaks for 6 hours in an 8-hour workday; limited to frequent push-pull maneuvers with his right upper extremity; can occasionally climb ramps and stairs, balance, stoop (bending at the waist), kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; limited to frequent overhead reaching, handling, and fingering with the right upper extremity; and limited to only occasional interaction with the public and coworkers. (Tr. 43).

At Step Four, the ALJ determined that Robinson has no past relevant work. (Tr. 48). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Robinson is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ concluded that Robinson is not disabled under the Act. (Tr. 49).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the

5

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the ALJ's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without

directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

*1.     The ALJ's Physical RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Robinson can perform a limited range of light work. (Tr. 43). Robinson now argues that, in formulating his RFC, the ALJ should have found that his "uncontrollable hypertension led to [a transient ischemic attack ("TIA")] and a heart attack resulting in restrictions that prevent more than sedentary work,"[2] which would have resulted in a finding that he was disabled pursuant to Medical Vocational Rule 201.14 (the "Grids"). (Doc. #17 at 16-17). For the reasons set forth below, the Court finds no merit to this argument.

In considering the effects of Robinson's TIA and hypertension on his RFC, the ALJ adequately summarized the medical evidence. For example, the ALJ noted that, on September 2,

---

[2] The record does reflect that Robinson was hospitalized briefly in April 2015 after suffering a heart attack. (Tr. 581-82). However, in arguing that the ALJ's RFC finding is not supported by substantial evidence, Robinson does not even mention this evidence, let alone explain how it should impact his RFC. Moreover, at a follow-up visit on May 14, 2015, Robinson had no cardiac complaints and reported that he was doing "pretty good." (Tr. 21-22). His physician imposed no cardiac restrictions and, in fact, encouraged him to exercise without limitation. (*Id.*). Thus, the records pertaining to Robinson's heart attack do not suggest that he is more limited than the ALJ found.

2012, Robinson received treatment at Highlands Medical Center for a TIA. (Tr. 45 (citing Tr. 205)). At that time, Robinson reported weakness in his arms and legs for one to two hours, which "resolved completely," as he reported feeling "back to his normal health" at discharge. (Tr. 205). On examination, hand grip and arm strength was equal, and he had only a little bit of weakness in the right leg. (Tr. 207). The ALJ also noted that on February 9, 2014, Robinson presented to the emergency room with a migraine headache, apparently resulting from hypertension. (Tr. 45 (citing Tr. 363-64)). The ALJ cited other medical evidence, however, indicating that taking Clonidine decreased his blood pressure. (Tr. 45 (citing Tr. 496)). And, indeed, subsequent records indicate that Robinson's hypertension was "well controlled." (Tr. 45).

Despite this evidence, Robinson argues that the ALJ should have given greater weight to the opinion of consulting physician Terrence Leveck, M.D. (Doc. #17 at 16-17). Dr. Leveck examined Robinson on March 27, 2013. (Tr. 347-49). He assessed Robinson with residuals from a stroke with mild right-sided weakness and some short-term memory loss, posttraumatic stress disorder, and hypertension. (Tr. 349). Dr. Leveck further opined:

> He would be able to sit for eight hours out of eight. Fine motor function might be somewhat impaired due to the weakness of his right upper extremity. He would be able to stand and walk to [sic] six hours out of eight and during that six-hour period he would be able to lift and carry 20 pounds continuously with his left upper extremity and 10 pounds occasionally with his right upper extremity.

(*Id.*). Robinson now argues that had the ALJ given greater weight to Dr. Leveck's opinion regarding his ability to use his right upper extremity, he would have been limited to sedentary work (resulting in a finding of disability pursuant to the Grids). (Doc. #17 at 17). This argument fails for two reasons.

First, even if the ALJ had completely adopted Dr. Leveck's lifting limitations, it does not

8

necessarily follow that Robinson would have been limited to sedentary work. It appears that Robinson interprets Dr. Leveck's opinion as limiting him to lifting 10 pounds in total. (Doc. #17 at 16-17). But, this interpretation is at odds with what the doctor actually said, as he specifically opined that Robinson could lift up to 20 pounds using his left arm. (Tr. 349). As the Commissioner points out, the ability to lift a lesser weight with one arm is not inconsistent with the ability to lift a greater weight with both arms or with the other arm. (Doc. #19 at 6 (citing *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) ("We agree with the appellee that Anderson's ability to lift ten pounds with his right arm is not inconsistent with the ALJ's finding that Anderson has the residual functional capacity to lift twenty pounds occasionally."))). *See also Morgan v. Astrue*, 2010 WL 3723992, at *12 (E.D. Tenn. June 30, 2010) (no inconsistency between doctor's opinion that plaintiff could not perform any lifting with his left upper extremity and RFC finding that he was capable of performing light work). Thus, even if the ALJ had completely credited this aspect of Dr. Leveck's opinion, it would not necessarily require a finding that Robinson is limited to sedentary work.

Moreover, the ALJ explained that he afforded Dr. Leveck's opinion only "some" weight because he found the lifting restrictions he imposed to be "overly restrictive." (Tr. 47). Specifically, the ALJ found these restrictions inconsistent with the results of Dr. Leveck's muscle testing, noting that, on examination, Robinson's grip strength was 4/5 on the right and normal on the left, and his wrist flexion and extension was 4/5 on the right and 5/5 of the left. (Tr. 47, 348). The ALJ also found Dr. Leveck's significant lifting restrictions inconsistent with his observation of only "mild" right-sided weakness. (Tr. 47, 349). The ALJ further pointed out that these restrictions were at odds with Robinson's statements that he drove to appointments, shopped, and performed most household chores (including using a push mower to mow his

yard). (Tr. 47, 340, 575). Finally, the ALJ found it noteworthy that Robinson's physician advised him to participate in a regular exercise regimen and referenced no physical limitations that would impede such a program. (Tr. 47, 503).

Here, where Dr. Leveck merely examined Robinson on one occasion, he was not a treating source, and the ALJ was not procedurally required to articulate "good reasons" for discounting his opinion. *See, e.g., Carden v. Berryhill*, 2017 WL 959316, at *4 (M.D. Tenn. Mar. 13, 2017) (ALJ was not required to provide any explanation for choosing to give weight to some (but not all) of physician's findings because she was a consulting physician, not a treating physician, and her opinions need not be evaluated in accordance with the treating physician rules). Regardless, the ALJ did in fact set forth several good reasons for giving Dr. Leveck's opinion only some weight, and these reasons are supported by substantial evidence, as set forth above. Thus, the Court finds no merit to Robinson's argument that the ALJ erred in evaluating Dr. Leveck's opinion, and the ALJ's physical RFC finding is otherwise supported by substantial evidence.[3]

2.  *The ALJ's Mental RFC Finding is Supported by Substantial Evidence*

Robinson also argues that the ALJ erred in evaluating his mental impairments by failing to explain why he gave only some weight to the opinions of his treating mental health provider at Volunteer Behavioral Health. (Doc. #17 at 17-18 (citing Tr. 209-12)). The forms that Robinson references are the Tennessee Clinically Related Group ("CRG") forms, completed by Jonathan Spears. (Tr. 209-12). As an initial matter, these forms were completed on September 8, 2010,

---

[3] The ALJ's RFC finding is also based, in part, on an evaluation of Robinson's subjective complaints. Specifically, the ALJ considered Robinson's noncompliance with medications, the fact that he continued to smoke despite being advised to quit, and his admission that he walked only infrequently despite being advised to exercise. (Tr. 45-46, 353, 437, 494, 534, 574, 576). These were all valid considerations, *see* 20 C.F.R. § 416.929, and Robinson does not challenge this aspect of the ALJ's decision.

10

but Robinson alleges a disability onset date of February 8, 2013, nearly 2 ½ years later. (Tr. 571). Thus, these documents are of little relevance to the substantial evidence review. *See Davis v. Berryhill*, 2017 WL 3642292, at *8 (M.D. Tenn. Aug. 23, 2017) ("Courts have held that an ALJ's failure to mention a treating physician's opinion, which was based on the claimant's condition before the alleged onset date, is harmless error.") (internal quotations omitted) (citing cases).

Moreover, although the ALJ did not specifically discuss the findings on these forms (namely, that Robinson had marked restrictions in activities of daily living and interpersonal functioning, as well as moderate restrictions in concentration and adaptation to change (Tr. 209-12)), he clearly reviewed and considered this evidence, as he referenced the Global Assessment of Functioning ("GAF") score of 50 that Robinson was assigned on that date (Tr. 45). This was sufficient. *See Albadiry v. Colvin*, 2014 WL 4533349, at *14 (M.D. Tenn. Sept. 11, 2014) ("In this case, the ALJ did not specifically mention the CRG assessment in question; however, it appears that she considered it because she referred to the plaintiff's GAF score of 55 … the ALJ also addressed the plaintiff's treatment history at Centerstone ….").

In sum, given that these forms were completed more than two years before Robinson's alleged onset of disability, as well as the fact that the ALJ documented consideration of the mental health records in question, Robinson has failed to show that the ALJ committed reversible error in omitting a more detailed discussion of these forms.

Moreover, Robinson's mental RFC is otherwise supported by substantial evidence. Specifically, the ALJ gave great weight to the March 21, 2013 opinion of consulting psychologist Jerry Campbell, Psy.D., who opined that Robinson was only mildly impaired in short-term memory and the ability to sustain concentration, and moderately limited in social

functioning, with a GAF score of 55-60. (Tr. 46, 340-41). The ALJ found this opinion consistent with the entire medical evidence of record, noting that mental health treatment records from the relevant time period consistently indicate that Robinson was "doing pretty good" (or something similar). (Tr. 46-47, 423 ("doing pretty good" on November 18, 2013), 430 ("pretty good" on January 22, 2014), 437 ("doing good" on June 6, 2014), 527 ("not good today, but I been alright" on September 8, 2014), 534 ("pretty good today" on December 16, 2014)). Finding Dr. Campbell's opinion consistent with the remainder of the record evidence, the ALJ credited Dr. Campbell's opinion that Robinson is moderately limited in social interaction and restricted him to only occasional interaction with the public and coworkers. (Tr. 43). Under the circumstances, the Court finds no error in the ALJ's mental RFC finding.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Robinson's Motion for Judgment on the Administrative Record (Doc. #17) be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

Dated: March 2, 2018                              s/David R. Grand
Ann Arbor, Michigan                    DAVID R. GRAND
                                                     United States Magistrate Judge
                                                     Sitting by Special Designation

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.